IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 2 9 2009

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

GONDOLIER PIZZA INTERNATIONAL,
INC.,

      Plaintiff,

v.

CRT TOO, LLC, JOHN GUARINO, ROB
A. JOHNSON, and CHRISTOPHER A.
SMITH,

      Defendants.

CIVIL ACTION NO.

1:08-CV-1986-JEC

## ORDER and OPINION

This case is presently before the Court on defendants' Joint
Motion to Dismiss or, in the Alternative, to Transfer Venue [8] and
Defendants' Joint Motion to Strike or, in the Alternative, Motion to
Transfer Case [22]. The Court has reviewed the record and the
arguments of the parties and concludes that defendants' Motion to
Dismiss or, in the Alternative, to Transfer Venue [8] should be
**GRANTED in PART and DENIED in PART,** and defendants' Joint Motion to
Strike or, in the Alternative, Motion to Transfer Case [22] should be
**DENIED.**

## BACKGROUND

Plaintiff Gondolier Pizza International, Inc., ("Gondolier" or
"plaintiff") is a Florida corporation, with its principal place of

business in Clearwater Beach, Florida. (Verified Complaint ("Compl.") [1] at ¶ 1.) Plaintiff is a franchisor that has developed a restaurant format and operating system for establishing, operating, and promoting Italian, Greek, and Mediterranean restaurants. (*Id.* at ¶ 10.) Plaintiff owns two federal service mark registrations for Gondolier restaurant services and also has a copyright on its menu. (*Id.* at ¶¶ 11, 13-16.) Plaintiff authorizes licensed franchisees to use the service marks and menu as part of the system it created for use in Gondolier restaurants. (*Id.*)

On April 30, 2004, plaintiff and Kali Orexi, LLC ("Kali Orexi" or "Kali"), a Tennessee limited liability company, executed a franchise agreement (the "Franchise Agreement" or "Agreement") for a *Gondolier franchise* restaurant located in Gatlinburg, Tennessee (the "Restaurant"). (*Id.* at ¶ 17.) The Franchise Agreement set out the usual terms covered in such agreements.

Pertinent to this litigation, the Agreement indicated that the term of the franchise would be ten years (Section IV(a) at 6); that the franchisor could terminate the agreement if the franchisee attempted to sell its interest in the franchise without the franchisor's prior written consent (Section XIII (E)(2) at 28), and that any action brought by either party to the agreement against the other party "in connection with any rights or obligations arising out of [the] Franchise Agreement" shall be brought in a state or federal

2

court in the State of Georgia (Section XV (D) at 34). *See* Gondolier

Pizza Franchise Agreement, Attachment 1 to Declaration of Petros

Pappas ("Pappas Decl.") [21-1].

Kali Orexi operated the Restaurant pursuant to the Franchise

Agreement until August 2007, when it sold its interests in the

Restaurant to defendant CRT TOO, LLC ("CRT").[1] (Pappas Decl. [21] at

¶ 8); Asset Sale and Purchase Agreement, Ex. 2 attached to Pappas

Declaration ("Asset Purchase Agreement") [21-2] at 1.) CRT is a

Tennessee limited liability company with three members who are also

defendants in this action: John Guarino, Rob A. Johnson, and

Christopher A. Smith (collectively referred to as the "individual

defendants"). (Declaration of Rob A. Johnson, Ex. A attached to

Defs.' Br. ("Johnson Decl.") [8-2] at ¶¶ 2, 18.)

The Asset Purchase Agreement between Kali Orexi and defendant

CRT provides for the assignment of Orexi's interests in the

franchise:

> 1.1  <u>Sale and Purchase of Assets</u>. Subject to all the terms
> and conditions of this Agreement..., SELLER shall
> sell, transfer, convey and *assign* to BUYER, outright
> and in fee, free and clear of all liens, claims and/or
> encumbrances the following assets (the "Assets"):

---

[1] CRT's chief manager, Rob A. Johnson, is listed as the buyer
on the Asset Purchase Agreement (Asset Purchase Agreement [21-2] at
1), but the agreement was later assigned to CRT: "[t]he undersigned
hereby agree to and consent to closing of the sale of assets by Kali
Orexi, LLC to CRT Too, LLC as assignee of Rob Johnson.") (*Id.*,
Satisfaction of Conditions to Closing at 10.)

3

> ...
> 1.1.3    Franchise: *All of Seller's right, title and interest in and to the Gondolier Restaurant franchise.*

(Asset Purchase Agreement [21-2] § 1.1 at 1.) (emphasis added.)

The Asset Purchase Agreement further set out certain contingencies that were to be satisfied by the closing date. Specifically:

> 3.1    Buyer's Contingencies.    Buyer's obligation to close hereunder is upon the satisfaction or waiver of the following items on or before October 15, 2007:
> ...
> 3.1.3    Approval for the transfer of the Gondolier Franchise to BUYER.
> ...
> 3.2    Failure of Contingencies.    If the Buyer's contingencies have not been met or waived on or before October 15, 2007, this contract will be null and void and Buyer will forfeit its earnest money.

*Id.*, § 3.1 at 2. (Emphasis added.)

It appears that it was defendant's obligation to obtain the consent of plaintiff, the franchisor, to the transfer of the franchise:

> 8.2    Delivery and Payment by Buyer.    On the Closing Date, BUYER will deliver to the SELLER the following:
>
> ...
>
> 8.2.4    Evidence of the consent of Gondolier Restaurants to the transfer of the location franchise to be effective as of closing.

*Id.,* § 8.2 at 4. (emphasis added.)    A representative of plaintiff's has testified that plaintiff provided its oral consent to Kali Orexi

4

for the transfer in "late 2007." (*Id.* at 2; Declaration of Bill Sioutis, Ex. A attached to Pl.'s Resp. ("Sioutis Decl.") [20-1] at ¶¶ 6-7.)

Somewhere around this October 2007 time period, Kali Orexi and defendant closed on the latter's purchase of the Gondolier Pizza Restaurant. As noted, the Asset Purchase Agreement assigned all the seller's rights in the franchise to defendant CRT. Notwithstanding this provision, defendant CRT insists that it had never seen a copy of the Franchise Agreement before the Asset Purchase Agreement was executed. (Johnson Decl. [8-2] at ¶ 6.) Rather, according to CRT, it had requested to see the Franchise Agreement, but had not been provided with a copy until early March 2008. (*Id.*)

It is CRT's position that it was operating under the "reasonable belief" that plaintiff "intended to negotiate an acceptable direct franchise relationship with it," when it closed on the Asset Purchase Agreement. (*Id.* at ¶ 12.) Plaintiff contends, however, that CRT never asked plaintiff for a copy of the Franchise Agreement and, in fact, never spoke to plaintiff prior to its purchase of Kali Orexi's rights in the franchise. (Sioutis Decl. [20-1] at ¶¶ 8, 9.)

Although defendant CRT contends that it had never seen the Franchise Agreement, plaintiff notes that CRT complied with the financial obligations of a franchisee after its closing with Kali Orexi. (Compl. [1] at ¶ 28.) For example, from November 2007

5

through March 2008, CRT paid plaintiff $3,200 per month, which was the exact amount that Kali Orexi paid to plaintiff for royalties under the Franchise Agreement.[2] (Sioutis Decl. [20-1] at ¶ 12.) CRT, however, asserts that those payments were not royalties under the Franchise Agreement, but that instead CRT had "offered to pay and did pay to Gondolier ... an agreed upon monthly stipend in consideration for [CRT's] interim use of the 'Gondolier' name and the other trappings of its franchise...."[3] (Johnson Decl. [8-2] at ¶ 11.) (Id.)

Consistent with defendant CRT's allegation that a new franchise agreement was to be executed in place of the original franchise agreement between plaintiff and Orexi, plaintiff and CRT did begin negotiations for a new franchise agreement in late 2007 and early 2008, but no agreement was struck. (Compl. [1] at ¶ 29.) These discussions started with CRT making modest handwritten changes, but "fairly quickly CRT's proposed changes turned into an effective re-writing of" the agreement. (Id.) Plaintiff rejected CRT's proposed changes and, according to plaintiff, "the original Franchise

---

[2]    Plaintiff Gondolier suggests that CRT must have referred to the Franchise Agreement to calculate the monthly amount paid because plaintiff never informed CRT or any of its members what the royalty amounts were under the Franchise Agreement. (Id.)

[3]    CRT also notes that the Franchise Agreement had called for an increased payment as of April 30, 2006, which means that the $3,200 per month that CRT paid was not in accordance with the original Franchise Agreement. (Defendants' Reply in Support of its Motion to Dismiss ("Defs.' Reply") [16] at 4.)

AO 72A
(Rev.8/82)

Agreement remained in force" as a result. (*Id.*)

Defendant CRT contends, however, that no relationship was established between it and plaintiff, and that "[i]n or about early March 2008, [CRT] decided to terminate and abandon its over six month long unsuccessful and frustrating effort to negotiate a direct franchise relationship with [plaintiff]." (Johnson Decl. [8-2] at ¶ 15.) CRT contends that it notified plaintiff of its decision to terminate any existing relationship and it thereafter renamed the restaurant "Guarino's." (*Id.*) CRT also claims that it "unilaterally initiated actions consistent with the complete cessation of use of any proprietary element of the former Gondolier franchise." (*Id.*)

Although CRT contends that it notified plaintiff of its decision to sever any connection with the Gondolier franchise, plaintiff states that it only learned of CRT's actions in May 2008.[4] (Compl. [1] at ¶ 30.) Plaintiff also contends that CRT continued to use Gondolier menus and recipes in connection with its new Guarino's restaurant business, in violation of the Franchise Agreement and other laws. (*Id.* at ¶ 32.)

Upon learning all of the above, Gondolier sent a written notice of termination to CRT. (*Id.* at ¶ 33 and Ex. 2 attached thereto,

---

[4] Plaintiff contends that it learned of CRT's actions when it made phone calls to the Restaurant and the phone was answered with the new restaurant name, Guarino's, as the greeting. (*Id.*)

AO 72A
(Rev.8/82)

Notice of Termination Letter, dated May 23, 2008 ("Termination Letter") [1-3].) In that letter, Gondolier demanded that CRT indicate its consent in writing to "pay to Gondolier all sums owing, including liquidated damages," as set forth in the Franchise Agreement, and to "strictly comply with all of its other post-termination obligations." (*Id.* at 2-3.) CRT apparently never responded to Gondolier's letter. (Compl. [1] at ¶ 35.)

Plaintiff brought suit against CRT and its three members on June 10, 2008. (*See id.*) In the verified complaint, plaintiff avers that defendant's cessation of operations of the Gondolier Restaurant, without the prior approval of plaintiff, constituted a breach of the Franchise Agreement, which agreement defendant assumed upon its purchase of the restaurant. (*Id.* at § 53.) Plaintiff also alleges that CRT's continuing use of Gondolier's marks and menu in its Guarino's Restaurant, after termination of the Agreement and without plaintiff's consent, amounts to: (1) trademark infringement; (2) copyright infringement; (3) breach of the Franchise Agreement; (4) misappropriation of trade secrets; (5) common law trademark infringement; and (6) unfair competition, unjust enrichment; and a violation of the Georgia Uniform Deceptive Trade Practices Act. (*Id.* at ¶¶ 36-85.) As a result, plaintiff seeks damages, a permanent injunction against the use of Gondolier's system, and attorneys' fees, as accorded under the Franchise Agreement. (*Id.* at ¶ 85.)

8

In lieu of an answer, defendants filed a joint motion to dismiss, arguing that this Court does not have personal jurisdiction over the defendants and that venue is improper in this district. (Defendants' Joint Motion to Dismiss or, in the Alternative, to Transfer Venue ("Defs.' Mot.") [8].) Defendants ask, in the alternative, that the Court transfer the case to the Eastern District of Tennessee. (*Id.*)

## DISCUSSION

## I. Enforceability of Forum Selection Clause Against Defendants

### A. Contentions of Parties

Defendants have moved for dismissal of this action, under FED. R. CIV. P. 12(b)(2), arguing that this Court lacks personal jurisdiction.[5] (Defendants' Joint Memorandum in Support of Defendants' Motion to Dismiss or, in the Alterative, to Transfer Venue ("Defs.' Br.") [8-1] at 9-19.) In support of this argument, defendants assert that they lack the requisite contacts with Georgia necessary to make the exercise of jurisdiction appropriate, under either general or specific personal jurisdiction.[6] (*Id.*)

---

[5] In the alternative, defendants contend that the case should be transferred to the Eastern District of Tennessee, pursuant to 28 U.S.C. § 1404(a), for the convenience of the witnesses and parties, most of whom live in Tennessee. (Defs.' Brief [8-1] at 21-23.)

[6] The only contact that defendants seem to have with Georgia is a relationship with a Georgia bakery that delivers the Restaurant's desserts. (Johnson Decl. [8-2] at ¶ 17.) Defendants contend that

9

Plaintiff does not dispute that defendants lack sufficient contacts with Georgia and would apparently agree that personal jurisdiction would be absent, were it not for the forum selection clause in the Franchise Agreement between plaintiff and non-party Kali Orexi. Plaintiff argues that, as the purchaser of the restaurant from Kali Orexi, defendants are subject to the provisions of the original Franchise Agreement. Because that agreement calls for any legal action concerning disputes arising out of the Franchise Agreement to be filed in the State of Georgia and because it stipulates the existence of personal jurisdiction and venue in Georgia, plaintiff contends that both personal jurisdiction over defendants and venue lie in this district. (*See* generally Plaintiff's Amended Response to Defs.' Mot. to Dismiss ("Pl.'s Resp.") [20] at 2,10-15.)

As to plaintiff's contention, defendants appear to agree that, *however scarce their contacts with Georgia, their personal jurisdiction argument will be trumped should the forum selection clause applies. The question before this Court on defendants' motion to dismiss then becomes the question whether the forum selection clause in the franchise agreement between plaintiff and Kali Orexi*

---

this scant connection with the State of Georgia comes nowhere near satisfying the test for personal jurisdiction. (*See* generally Defs.' Br. [8-1] at 10-19.)

10

can be enforced against defendants, who were not signatories to the original Franchise Agreement.

### B. Standard for Analyzing Enforceability of a Forum Selection Clause

The Eleventh Circuit has held that a motion to dismiss based upon a forum selection clause or a choice of law clause should be treated as a motion to dismiss for improper venue, under FED. R. CIV. P. 12(b)(3). *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998). The *Lipcon* court explained that the Supreme Court had earlier noted that 28 U.S.C. § 1404(a), which vests authority in a district court to transfer a civil action to any other district where it might have been brought, controls the request of a party to give effect to a contractual forum-selection clause by transferring the action.[7] *Id.* at 1290.

As to the law to be applied in analyzing a dispute concerning the application of a forum-selection clause, a court's determination should be governed by federal, not state, law. *P&S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("The

---

[7] In this case, the party seeking to transfer the action (the defendant) is <u>not</u> the party who seeks to give effect to the contractual forum-selection clause. In the *Lipcon*-type cases, the defendant typically moves to transfer jurisdiction to <u>give</u> <u>effect</u> to a forum-selection clause. For purposes of this discussion, the Court assumes that this wrinkle on the typical factual scenario will not affect the analysis or ultimate result. Further, the defendant here does seek a transfer, albeit that transfer request is made in an effort to <u>defeat</u> the forum-selection clause.

AO 72A
(Rev.8/82)

validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general."). *Emerald Grande, Inc. v. Junkin,* 2009 WL 1783986 at *2 (11th Cir. June 24, 2009) (the same).

### C. Are The Defendants, Who Are Non-Signatories to the Franchise Agreement, Bound by Its Forum-Selection Clause?

As noted, the defendants did not sign the Franchise Agreement to which the plaintiff now contends them to be bound. The Franchise Agreement was between the franchisor (the plaintiff) and the original franchisee (Kali Orexi), who, several years later, sold their restaurant to the defendants. Defendants therefore argue that they are not subject to the forum-selection clause found in that Agreement.

#### 1. Defendant CRT

As a general rule, a party who does not sign a contract is not bound to the terms of that contract. *Cooper v. Meridian Yachts, Ltd.,* 575 F.3d 1151, 1169 (11th Cir. 2009). Therefore, absent a valid exception, a party cannot enforce a forum-selection clause in a contract against an adverse party who was not a party to the contract. Federal courts have recognized one exception to this general rule. Specifically, to bind a non-party to a forum-selection clause, this non-party "must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Lipcon,* 148

12

F.3d at 1299 (quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). A non-signatory to a contract will be bound by that contract's forum-selection clause where that entity's rights were "'completely derivative of those of the [signing parties–and thus 'directly related to, if not predicated upon,' the interests of the [signing parties].'" *Cooper*, 575 F.3d at 1170 (quoting *Lipcon*, 148 F.3d at 1299).

Plaintiff cites to *Lipcon* in support of its contention that defendants are bound by the forum selection clause in the Franchise Agreement between plaintiff and Kali Orexi. (Pl.'s Resp. [20] at 11-12, 15.) As to its reasons for asserting that defendants are so "closely related" to Kali Orexi that defendants could have foreseen that they would be bound and that defendants' rights are completely derivative of those of Kali Orexi, plaintiff notes that the Asset Purchase Agreement provided that Kali Orexi was selling, transferring, conveying and assigning to defendants "all of [Kali Orexi's] right, title and interest in and to the Gondolier Restaurant franchise." (*Id.* at 13.) (*See* Asset Purchase Agreement [21-2] at § 1.1.3, 1.) Accordingly, plaintiff seems to suggest that defendants effectively assumed or became the assignees to the franchise agreement. Defendants therefore were substituted for Kali Orexi as to both its rights and obligations as a franchisee, according to this

13

argument.[8]

In reply, the corporate defendant, CRT, has not attempted to refute plaintiff's construction of the Asset Purchase Agreement or plaintiff's argument that defendant is bound to the forum-selection clause under the *Lipcon* exception for "closely related" non-signatories. Indeed, the defendants' Joint Reply never even mentions the *Lipcon* case or the test it adopted. Instead, defendant CRT's only effort to rebut plaintiff's argument is its assertion that defendants never expressly assumed or guaranteed the Kali Orexi Franchise Agreement, nor did it enter into a written franchise agreement of its own with plaintiff. *(See* Defs.' Joint Reply [16] at 2.)

That assertion is correct and, once the parties actually brief the relevant assignment of contract principles in a summary judgment motion, defendant CRT will perhaps have a winning argument on the merits as to plaintiff's effort to bind defendant to the terms of the Franchise Agreement. For now, however, the defendant's argument that plaintiff cannot prevail because there was no written document signed by defendant begs the question before the Court, which is: given that the defendants signed no contract with the plaintiff, are the

---

[8] Unfortunately, plaintiff offers no case authority concerning the law of assignment, particularly as it relates to franchise agreements. Indeed, the terms "assignment" and "assumption" are the Court's, not the plaintiff's.

14

defendants closely related enough to a signatory to bind the defendants to the former's agreement? Until defendant CRT grapples with that question, it has not joined the issue.

Because defendant CRT has failed to respond to plaintiff's argument that defendant is bound under the *Lipcon* exception and because defendant has the burden of persuasion on its motion to dismiss or transfer venue, the Court is unable to grant it relief on this motion.[9] *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995)("The onus is upon the parties to formulate arguments," not the district court).

## 2. Individual Defendants

While defendants' Joint Reply does not address the applicability of the "closely related" test to defendant CRT, the Reply does indicate that, as to the individual defendants, plaintiff has offered no factual basis for attributing the Franchise Agreement to these defendants. The Court agrees.

The Asset Purchase Agreement was between Kali Orexi and CRT.[10] Plaintiff offers no legal basis for its argument that the individual defendants here, who signed nothing, are somehow required to take the

---

[9]  See discussion *infra*, at 22-23 and 22 n.14.

[10]  As noted *supra* at 3 n.1, individual defendant Rob Johnson was listed as the original buyer on the Asset Purchase Agreement, but, by the time of the closing, he had assigned his interest to CRT.

AO 72A
(Rev.8/82)

place of the Kali Orexi individual guarantors in the Franchise Agreement entered three years before between Kali Orexi and plaintiff. The Court considers this contention to be frivolous. Accordingly, as there is no conceivable way that the Franchise Agreement, with its Georgia forum-selection clause, can be made attributable to the individual defendants, there is no personal jurisdiction over these defendants in Georgia.

Plaintiff argues, however, that the Court should keep the individual defendants in the case, even though the *forum selection* clause clearly cannot be applied to them, because plaintiff's claims against these defendants are inextricably intertwined with the claims against the corporate defendant CRT and because the individual defendants should have been able to foresee that they would be named as parties in a Georgia action. Plaintiff's argument attempts to stretch the *Lipcon* exception well beyond any holding in that line of authority that this Court has reviewed.[11]

_____

[11] Indeed, it is not clear that *Lipcon,* in an unstretched form, will ultimately win the day for plaintiff as to defendant CRT. In *Slaihem v. Sea Tow Bahamas, LTD,* 148 F.Supp.2d 1343 (S.D. Fla. 2001)(Moreno, J.) a Southern District of Florida judge concluded that the *Lipcon* "closely related" test did not permit him to find the existence of personal jurisdiction over a defendant who had not signed the contract containing the forum-selection clause and who argued that his contacts with the forum state were too slim to permit the exercise of jurisdiction.

Judge Moreno noted that cases in the *Lipcon* line of authority had been used to enforce a forum selection clause against a plaintiff

Admittedly, defendant CRT did not sign the franchise agreement, which would normally mean that CRT is not subject to that Agreement, including its forum-selection clause. Yet, plaintiff has made a conceivably plausible argument, unrebutted by defendant, that the terms of that agreement can potentially be attributed to CRT. Defendant CRT may not have signed the Franchise Agreement, but it signed a document--the Asset Purchase Agreement--that plaintiff argues essentially ties defendant to the Franchise Agreement and its forum-selection clause.

The individual defendants, however, never signed the Asset Purchase Agreement nor can they otherwise be deemed to be parties to that agreement. Notably, plaintiff has not alleged that the individual defendants are the alter ego of defendant CRT. The Asset Purchase Agreement is the vehicle by which plaintiff attempts to tie defendant CRT to the Franchise Agreement, with its forum-selection clause. Because the individual defendants are not parties to the Asset Purchase Agreement, plaintiff lacks any means to tie them to the Franchise Agreement, which is a prerequisite to attributing the

---

who was not a signatory to the contract, but had not been used as a basis for personal jurisdiction over a defendant who had not signed the agreement. He further noted that, to do so, could implicate due process considerations. *Id.* at 1348. This Court has also read numerous cases that discuss the "closely related" test in relation to the enforcement of a forum-selection clause. It has seen no case in which the clause was enforced against a non-signing defendant.

AO 72A
(Rev.8/82)

forum-selection clause to them.

Accordingly, the Court **DENIES without prejudice** defendant CRT's motion to dismiss based on the non-applicability of the forum-selection clause to them, and therefore the absence of personal jurisdiction, and **GRANTS** the individual defendants' motion to dismiss on that same ground.

## II. Motion to Dismiss for Lack of Venue or, Alternatively, to Transfer Venue to the Eastern District of Tennessee

### A. Motion to Dismiss Based on Improper Venue

Defendant CRT[12] also argues that the Court should dismiss the suit for improper venue, under 28 U.S.C. § 1391. For venue to lie under § 1391, an action must be brought in a district: (1) where a defendant resides; (2) where a substantial part of the events giving rise to the action occurred; or (3) where any defendant is subject to personal jurisdiction.

Again, as with the issue of personal jurisdiction, there is no question that venue would be improper in this district were there no forum selection clause in an agreement to which the defendants are bound. *See In re Fireman's Fund Ins. Cos.*, 588 F.2d 93, 95 (5th Cir. 1979)(stating that "[v]enue may, of course, be waived" and "[i]t may also be varied by contract...."). Defendant CRT's failure to

---

[12] As the individual defendants have now been provisionally dismissed, the Order focuses on defendant CRT as to the remaining motions.

satisfactorily engage the plaintiff as to the applicability of the forum-selection clause in the Franchise Agreement gives rise to the same result for the motion concerning venue as it did for the motion concerning personal jurisdiction. In effect, defendant failed to respond to plaintiff's contention in any way that would help the Court identify a cognizable legal argument on its behalf. For that reason, the Court also **DENIES** defendant CRT's motion to dismiss, based on improper venue.

### B. Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

Defendant CRT argues that the Court should transfer the case to the Eastern District of Tennessee, pursuant to 28 U.S.C. § 1404(a), which allows a transfer from an inconvenient forum to a more convenient one. Defendants argue that: (1) the Eastern District of Tennessee is a district in which the case could originally have been brought; (2) the majority, if not all, of defendants' witnesses are located in Tennessee; (3) the defendants reside there; and (4) it would be "substantially more convenient to litigate this matter in that U.S. District Court for the Eastern District of Tennessee."[13]

---

[13] The Restaurant is located in Gatlinburg, Tennessee, which is in Sevier County. Sevier County is properly located in the Eastern District of Tennessee. Because the Restaurant is located there, the defendants are there, and the locus of the action occurred there, venue would be proper in that District. Plaintiff does not dispute this fact.

19

(Defs.' Br. [8-1] at 22-23.)

In evaluating any § 1404(a) motion to transfer venue, a court must weigh the plaintiff's forum choice against considerations of convenience, cost, and judicial economy. *Stephens v. Entre Computer Centers,* 696 F.Supp. 636, 640 (N.D.Ga. 1988). Nevertheless, the presence of a forum-selection clause will be "a significant factor that figures centrally in the district court's calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). "Thus, while other factors might 'conceivably' militate against a transfer ... the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (quoting *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)). Indeed, because a forum-selection clause is entitled to "unique and considerable weight in the §1404(a) analysis," a court will decline to enforce a forum-selection clause only in an "exceptional" situation. *Vickers v. Wells,* 2006 WL 89858 at *2 (N.D.Ga. Jan. 11, 2006).

There are some unusual factors in this case that prompt a serious consideration of defendant CRT's contention that venue should be transferred. First, the individual defendants will be dismissed from any action in this Court, meaning that defendant CRT would be the only defendant before this Court. While plaintiff may be able to obtain complete relief on the breach of contract claim in this

20

district, as defendant CRT is the only proper party for such a claim, the individual plaintiffs are named in all of the other claims arising out of the collective defendants' allegedly improper use of plaintiff's trademark and trade secrets following their renaming of the restaurant. To obtain complete relief on those claims, plaintiff will presumably wish to litigate those claims against the individual defendants, as well as against defendant CRT.

Yet, to do so, plaintiff will have to pursue an action against the corporate defendant, CRT, in this district, while pursuing a simultaneous action against the individual defendants in the Eastern District of Tennessee. That will be a costly and wasteful effort both for the defendants and the plaintiff, as well as for the two courts that will be involved.

Because the Court intends to have the parties file and brief summary judgment motions on the breach of contract claim as to defendant CRT, *see infra* at 22 *et seq.,* it is possible that the latter claim will be dismissed. If so, there will then be no basis for any assertion of personal jurisdiction by the plaintiff and the Court will then have dismissed all defendants from the case on personal jurisdiction grounds. If that occurs, the motion to transfer will be moot.

Alternatively, as noted, if plaintiff succeeds in showing that defendant CRT is bound to the terms of the contract, the contractual

21

claims against CRT would remain viable, but plaintiff would presumably also want to prosecute its other claims against the individual defendants. The prospect of piecemeal litigation of the same case in two different districts might prompt the Court to revisit the motion to transfer venue. Accordingly, given this possibility, the Court **DENIES WITHOUT PREJUDICE** defendants' Motion to Transfer Venue [8].

## III. FUTURE PROCEEDINGS

### A. Filing of Summary Judgment Motions on Question Whether Defendant CRT Is Bound by the Terms of the Franchise Agreement

The Court has granted the individual defendants' motion to dismiss based on a lack of personal jurisdiction. The Court has denied without prejudice defendant CRT's motion made on the same ground. The Court's denial of the motion was based on the absence of advocacy by the defendant on the contested point, and not on any considered judgment of the merits of the motion. Indeed, the Court has been stymied in its efforts to gauge the merits of the motion as a result of the inadequate briefing and lack of advocacy by both parties.[14] As noted, the plaintiff's showing on this issue was about

---

[14] After the initial motion and response were filed, the Court, *sua sponte,* gave the parties additional time to conduct discovery on the personal jurisdiction issue and permission to then file new pleadings. (*See* Order [17].) Instead, the parties conducted no discovery; the defendants filed no new briefing; and the plaintiff filed an amended response that was identical to its original

22

as weak as was the defendant CRT's. Had the movant been the plaintiff, instead of the defendant, plaintiff would have lost. Thus, while it is true that defendant never discussed the *Lipcon* exception on which plaintiff based its assertion that personal jurisdiction existed, plaintiff never set out the legal basis for its implicit argument that, by signing the Asset Purchase Agreement, defendant CRT either assumed or was the assignee of the earlier Franchise Agreement. Plaintiff merely hypothesizes that somehow defendants are bound to a Franchise Agreement that they never signed, and it is on this hypothetical legal status that plaintiff pegs its argument that the CRT is "closely related."

At bottom, plaintiff's assertion of personal jurisdiction against defendant CRT necessitates the same analysis that would be

---

response, except for citations to newly filed affidavits. (*See* Pl.'s Am. Resp. Mem. in Opp'n [20].) The new affidavits filed by plaintiff were unhelpful because, to the extent that they demonstrated a factual proffer by plaintiff as to the course of conduct between the parties, plaintiff nowhere explained how those facts, even if assumed to be true, figured into a legal analysis of the problem.

In short, it appears clear that the Court has spent a great deal more time researching and analyzing these issues than has either party. The parties each throw out topic sentences and broad, conclusory assertions, and then apparently expect the Court to run down these leads. It is inappropriate to expect the Court to do all the legal research for the parties, as well as to identify the arguments that each party could or should make under the existing law. Instead, it is counsel's duty to advocate for their clients. Yet, as both parties' are equally remiss, it has been difficult to determine which party most deserves to lose.

23

AO 72A
(Rev.8/82)

required to determine whether plaintiff has asserted the predicate for a meritorious claim on its breach of contract action. That overlap between a determination whether personal jurisdiction exists and a determination, on the merits, of the breach of contract claim means that the Court should decide whether plaintiff has stated an actionable claim on this ground. Thus, if plaintiff can identify an applicable theory of contract law[15] such that the original Franchise Agreement can be deemed to apply to defendant CRT, plaintiff will prevail--or at least get to a jury, if there is a material factual dispute--on its contract claim, as well as sustain its assertion of personal jurisdiction as to defendant CRT: the latter being premised on defendant being bound by the terms of that Franchise Agreement just as if it had signed the document. If plaintiff cannot maintain its contract claim against the defendant, then it has necessarily failed to demonstrate the existence of personal jurisdiction.

Accordingly, the Court will require each party to file a motion for summary judgment on the question whether defendant CRT was bound by the terms of the Franchise Agreement. If defendant was not bound by the terms of that agreement, plaintiff's breach of contract claim necessarily fails. In requiring summary judgment motions, the Court

---

[15] The "closely related" doctrine, which is an exception to general rules of contract construction and applicable only in a Rule 12(b)(2) or 12(b)(3) context, does not count as a theory of contract law.

24

follows the approach set out by the Eleventh Circuit in *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990)).[16] The *Lawrence* court recognized two types of challenges to subject matter jurisdiction: a facial attack and a factual attack. *Id*. at 1528-29.[17]

A facial attack requires the Court to treat the motion as it would treat a Rule 12(b)(6) motion: that is, the court assumes the allegations in the plaintiff's complaint are true, construes the facts in the plaintiff's favor, and then decides whether the

---

[16]    The Court is aware that the Eleventh Circuit's general standard for addressing personal jurisdiction challenges is phrased somewhat differently than the *Lawrence* protocol, which focuses on subject matter jurisdiction. Specifically, in *Francosteel Corp., Unimetal-Normandy v. M/V Charm P/R Tiki, Mortensen, & Lange*, 19 F.3d 624, 626 (11th Cir. 1994), the circuit established that where a court does not conduct an evidentiary hearing on the personal jurisdiction issue, the plaintiff need only establish a *prima facie* case for jurisdiction. A *prima facie* case is established if, construing all facts and drawing all reasonable inferences in the light most favorable to the nonmovant (the plaintiff), the latter has offered evidence that would be sufficient to defeat a motion for directed verdict.

The result here would be the same whether the Court followed the *Franco-Steel* or the *Lawrence* test. Given the fact that the Court is essentially examining the merits of one element of one of plaintiff's claims in order to determine the existence of personal jurisdiction, the exercise is more akin to resolving a motion for summary judgment.

[17]    While most Eleventh Circuit cases utilize the *Lawrence* approach in examining challenges to the Court's subject matter jurisdiction under F.R.Civ.P.12(b)(1), this approach can also be employed in other Rule 12(b) challenges, such as motions to dismiss based on lack of personal jurisdiction or improper venue. *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).

AO 72A
(Rev.8/82)

Complaint has stated a claim. *Sinaltrainal v. Coca-Cola Co.*, -
-F.3d--, 2009 WL 2431463 at * 3 (11th Cir. 2009). Here, the Court
would be called on to determine whether the plaintiff had shown that
the defendant was bound by the Franchise Agreement that plaintiff
claims was breached. The Court's decision would be purely a
determination as a matter of law.

A factual attack introduces, and bases, its challenge on facts
not set out in the Complaint. *Lawrence*, 919 F.2d at 1529. If a
determination of a factual attack requires the Court to essentially
decide the merits of the dispute, as it might here, the court must
apply a Rule 56 summary judgment standard. That is, the court must
construe the facts in the light most favorable to the plaintiff and
grant the motion to dismiss only if the plaintiff would be entitled
to no relief on the merits, as a matter of law. In short, a district
court should apply a Rule 56 summary judgment standard "when the
jurisdictional basis of a claim is intertwined with an element of the
cause of action because, in those cases, the attack on jurisdiction
is also an indirect attack on the merits." *Bryant v. Rich,* 530 F.3d
1368, 1377 n.13 (quoting *Lawrence v. Dunbar,* 919 F.2d 1525, 1530
(11th Cir. 1990).

It is uncertain that the disputed facts in this case will factor
greatly into a determination whether defendant is bound by the terms
of the Franchise Agreement on some sort of assignment, assumption, or

26

AO 72A
(Rev.8/82)

estoppel theory.[18] Nevertheless, the Court cannot be certain of that fact until the parties have thoroughly briefed the issue. Accordingly, the Court will assume that the attack is both facial and factual and will apply a summary judgment standard.

Few contract claim cases go to a jury because factual disputes are usually irrelevant and a reviewing court interprets the plain language of the document according to accepted rules of construction. Instead, in such cases, each party usually files its own brief setting out why, as a matter of law, that party's interpretation of the contract should prevail. The court then picks the winner out of these dueling motions.

The same approach is appropriate here. Further, as it is up to the plaintiff, at the outset, to offer some legal support for its assertion that the defendant is bound to a contract that it never signed, the Court directs that the plaintiff file the opening motion for summary judgment. Defendant shall respond with a brief that is a combination response and motion for summary judgment. Plaintiff may reply and defendant may file the final reply.

---

[18] While each party offers its own account of the interaction between the parties during the period of time after defendants purchased the restaurant, neither party attempts to explain how its particular version of the events affects the legal analysis. One might have expected some citation of case authority by the parties as to the interplay between the particular facts asserted and application of controlling contract law principles.

Ultimately, to succeed on the merits of its breach of contract claim, the plaintiff will have the burden of persuasion and must affirmatively demonstrate, through thorough research and a careful analysis of applicable law, that defendant is bound to the original Franchise Agreement, even though it never signed that document. As noted, the general rule is that one who does not sign a contract is not bound by the contract's terms. Plaintiff will need to marshal case law indicating that, under the circumstances existing in this case, defendant assumed all obligations set out in the Franchise Agreement, either as an assignee or otherwise. A good brief on this subject will involve a thorough discussion of relevant or analogous contract law principles. Similarly, an adequate response to any such brief will require the defendant to undergo the same exercise. Broad, conclusory assertions by the parties, in place of citation to relevant legal authority, will not be acceptable. The Court expects more than issue-spotting in this next round of briefing.

Further, to the extent that there are material, factual disagreements between the parties as to their course of conduct at the time that defendants entered into the Asset Purchase Agreement with Kali Orexi, the parties will have to explain to the Court, though the proper citation of applicable legal principles, why their own particular version of the facts compels or suggests a favorable result.

An additional obstacle for both parties and the Court is identifying whether Georgia or Tennessee law applies. The Franchise Agreement indicates that Georgia law applies. Plaintiff has some hurdles to overcome to persuade the Court that Georgia law does apply.[19] If Georgia law does not apply, then Tennessee law governing the interpretation of contracts will necessarily govern. Because the Court cannot know at this time which law will control, the parties will need to brief both state's laws on all important questions, including any inherent conflict of law issues, and inform the Court how those laws differ.

**B.  Alternative Procedure in Lieu of Filing Summary Judgment Motions**

Both Gondolier and CRT were quite sloppy in their dealings with each other. Plaintiff knew full well that defendants were purchasing Kali Orexi's franchised restaurant, yet plaintiff never took the simple step of insuring that defendants signed an agreement acceding to the terms of the existing Franchise Agreement with Kali. As plaintiff had the right under its own contract with Kali Orexi to require that the latter gain plaintiff's approval of any transfer of

---

[19]  A non-signatory can be bound to a choice of law clause, as opposed to a forum-selection clause, under a limited set of circumstances, such as: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel. *Cooper*, 575 F.3d at 1169-70.

AO 72A
(Rev.8/82)

title, plaintiff could have easily accomplished this simple task. Had this one step been taken, there would either be no litigation or plaintiff would readily prevail had defendants later breached the terms of an agreement that they had signed.

Defendants were also quite casual. They purchased a restaurant knowing that it was subject to a franchise agreement. Indeed, the existence of that franchise relationship presumably represented part of the value of the purchase, and defendants enjoyed the fruits of that relationship for several months. Yet, perhaps thinking that, by not signing an agreement, they were home free, defendants have now become entangled in potentially expensive litigation that would have been unnecessary had they refrained from purchasing the restaurant until the franchise situation was ironed out with plaintiff.

The law is not always well-suited to facts such as these. Performing the necessary research to find analogous cases in support of an odd factual situation can require a great deal of time and effort. Time and effort are expensive, particularly in a case where the damages may not reach the amount necessary to render extended litigation cost-effective.

For all of the above reasons, the Court encourages the plaintiff to instead consider acceding to defendant's request that venue be

30

transferred to the Eastern District of Tennessee.[20]  A transfer will obviate the need for litigation in this district concerning personal jurisdiction.  It will further avoid the parties having to engage in simultaneous, piecemeal litigation in two different states.

As an additional alternative, the Court encourages the parties to explore settlement of this matter.  Should the parties wish to negotiate or mediate their dispute, the Court will stay the date for filing a motion for summary judgment.

The parties and counsel should confer.  The Court sets a status conference for **Thursday, November 5, 2:00 p.m.**, at which time the Court and counsel will discuss the above options and set a scheduling order.

### CONCLUSION

For the foregoing reasons, the Court concludes that defendants' Motion to Dismiss [8] should be **GRANTED IN PART AND DENIED IN PART**, and defendants' Alternative Motion to Transfer to the Eastern District of Tennessee [8] should be **DENIED**.  Defendants' Joint Motion

---

[20]  The Court will not view as final its dismissal of the individual defendants until the course of future proceedings is more firmly set.  If, for example, the Court determines, or the parties agree, that venue should be transferred to Tennessee, the Court will not--and likely could not--dismiss the individual defendants, while at the same time sending the rest of the case concerning defendant CRT to Tennessee.  If venue is to be transferred, the Court will then reconsider and reverse its decision to dismiss the individual defendants, and it will then transfer the entire case, as originally filed, to the Eastern District of Tennessee.

AO 72A
(Rev.8/82)

to Strike or, in the Alternative, Motion to Transfer Case [22] should also be **DENIED**.

SO ORDERED, this 25 day of September, 2009.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)